UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT EARL DAVIS,

     Petitioner,

   v.        CAUSE NO.: 3:19-CV-1060-RLM-MGG

WARDEN,

     Respondent.

## OPINION AND ORDER

Robert Earl Davis, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2012 murder conviction in Lake County under cause number 45G02–1107–MR–6. (ECF 2.). The court denies the petition for the reasons stated in this opinion.


## I.  BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct unless Mr. Davis rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals set forth these facts:

> Alisha Williams lived with Parrish Myles, whom she had been dating for sixteen years, and their two children, A.L. and D.M., in The Mansards Apartments in Griffith, Indiana. On the morning of July 22, 2011, Alisha was running late for work so she asked Parrish to take A.L., age eleven, and D.M., age five or six, to day care. Around 9:30 a.m., Parrish put the children in his Chevrolet Tahoe. A.L. got in the front seat, and D.M. got in the back seat. Parrish went to put trash in the

dumpster when a bronze-colored Toyota [Camry] with Illinois license plates and registered to Davis pulled up.

The occupants of the Camry called out to Parrish, and Parrish walked up to the passenger side of the car and briefly talked to the two men in the car. As Parrish walked away from the Camry, a shot was fired from inside the car, hitting him. A man in a red-colored shirt, white tennis shoes, and hat exited the driver's side of the Camry and shot Parrish again. A man in a white shirt stayed in the car and slid over to the driver's seat. The man in the red-colored shirt and white tennis shoes got in the passenger seat, and the man in the white shirt drove away. A.L. witnessed the entire incident. Other residents in the apartment complex heard the shots and called 911. One of the residents, Rosa Orphey, had just finishing drinking tea on her patio when she saw the man in the red-colored shirt shoot Parrish while he was on the ground. Another resident, Krystle Gavin, was putting antifreeze in her car when she heard the shots. Krystle said that a man in a red-colored shirt had a gun and that his skin was darker than the man's skin in the car.

Griffith Police Department Officer Robert Carney responded to reports that a gold sedan was leaving the scene of a shooting. Officer Carney quickly located the car, which was stopped at a red light at the intersection of Ridge Road and Broad Street. Officer Carney noticed the car because a man was standing outside the passenger side, walked around the car, and entered the driver's seat, thereby switching drivers. Although the man was wearing a light-colored shirt instead of a red-colored shirt, the man was wearing white tennis shoes, the same color as the shooter's shoes. Officer Carney activated his emergency lights. The man, however, refused to stop, and a high-speed chase ensued with the Camry reaching speeds of over 100 miles per hour, running red lights, and weaving through traffic in residential areas and on I–80/94. At one point, the driver stopped and dropped off the man in the white shirt, who was wearing black tennis shoes. He disappeared along the Little Calumet River carrying a red-colored shirt and a red hat as the driver sped off. Officer Carney continued his pursuit of the driver until Officer Carney crashed his car into a tree in a residential area. Another officer continued chasing the driver, and the chase ended when the driver, identified as forty-five-year-old Davis from Chicago, crashed his Camry head-on into another police officer's car. The police collected Davis's clothing, which included a light-colored shirt and white tennis shoes. The passenger of the car who had been dropped off at the Little Calumet River, Davis's twenty-nine-year-old nephew, Lyndon Davis ("Lyndon"), also from Chicago, was eventually apprehended.

Police responded to the scene of the shooting within minutes to find Parrish lying face down in the roadway. Parrish was breathing and moving slightly but quickly lost his pulse. An ambulance transported Parrish to the hospital. Parrish was shot four times and died from multiple gunshot wounds. A copper bullet jacket was collected at the scene and bullet fragments were collected from Parrish's body. It was determined that the bullet fragments and casings were fired from the same weapon, which was never recovered. Police recovered a red-colored shirt and a red hat on the river bank near the area where Davis had dropped off Lyndon during the chase.

The State charged Davis with murder and felony murder, but the State dismissed the felony-murder charge before trial. A five-day jury trial began in January 2012. The State's theory at trial was that Davis was the shooter; the State uncovered no motive for the murder. Davis's theory was that "he had nothing to do with the killing of Parrish Myles," he did not have an agreement with Lyndon, and the "only thing" he was guilty of was "fleeing from the police." The trial court instructed the jury on accomplice liability. The jury found Davis guilty of murder. Following the sentencing hearing, the trial court found no mitigators and two aggravators, Davis's prior convictions of murder and armed robbery and that Davis committed the murder in front of Parrish's children. The court sentenced [Davis] to sixty-five years.

Davis v. State, 982 N.E.2d 30 (Table), 2013 WL 244112, at *1-*2 (Ind. Ct. App. Jan. 23, 2013) (internal citations omitted).

Mr. Davis raised these claims on direct appeal: the jury instructions on accomplice liability were flawed; the prosecutor committed misconduct during closing argument by making a comment implicating his right to remain silent; the evidence was insufficient to support his murder conviction; and his 65-year sentence was inappropriate. Id. at *2-*9. The Indiana Court of Appeals rejected each argument. Id. The court concluded that Mr. Davis didn't lodge a contemporaneous objection to the jury instructions, so his claim could only be reviewed for fundamental error. Id. at *3. The court found no such error and instead concluded that the instructions properly

stated Indiana law. *Id.* at *3-*4. The court next concluded that Mr. Davis didn't properly preserve his prosecutorial misconduct claim under Indiana law by requesting a mistrial when the comment was made; therefore this claim, too, could only be reviewed for fundamental error. *Id.* at *4-*5. The court found no such error, concluding that the prosecutor's stray comment didn't deny Mr. Davis a fair trial. *Id.* at *6. The court also found the evidence sufficient to support Mr. Davis's conviction as either the shooter or as an accomplice to Lyndon based on the testimony of the eyewitnesses' testimony. *Id.* at *6-*9. Finally, the court rejected Mr. Davis's claim that his sentence was unduly long. *Id.* at *9. Instead, the court concluded that his sentence was appropriate in light of his extensive criminal record, including a prior murder conviction, and the "tragic" nature of the offense, which involved shooting the victim in front of his two young children. *Id.* The court affirmed his conviction and sentence in all respects. *Id.* Mr. Davis sought transfer to the Indiana Supreme Court raising only his claim about an error in the jury instructions. (ECF 11-6.) The supreme court denied the petition. Davis v. State, 987 N.E.2d 522 (Ind. 2013).

Mr. Davis filed a petition for state post-conviction relief. The court denied the petition after an evidentiary hearing. Davis v. State, 124 N.E.3d 641 (Table), 2019 WL 1526405, at *1 (Ind. Ct. App. Apr. 9, 2019). On appeal from that ruling, Mr. Davis raised these claims: (1) the trial court committed procedural errors in the handling of his post-conviction filings and in conducting the evidentiary hearing; (2) his trial counsel was ineffective in failing to move to suppress the clothing he was wearing at the time of his arrest, failing to adequately cross-examine the child witness A.L., and

failing to object to the jury instructions on accomplice liability; and (3) his appellate counsel was ineffective because he misstated the ballistics evidence in his appellate brief. *Id.* at *2-*10. The court of appeals found no error in the trial court's handling of the petition, and concluded that Mr. Davis hadn't established ineffective assistance by either his trial counsel or his appellate counsel. *Id.* Mr. Davis sought review in the Indiana Supreme Court, asserting two grounds of ineffective assistance by trial counsel: in failing to object to the jury instructions on accomplice liability and in failing to move to suppress the clothing he was wearing at the time of his arrest. (ECF 11-15 at 1-6.) He also reasserted his claim that the court had mishandled his post-conviction filings. (*Id.* at 7-9.) The supreme court denied his petition to transfer. Davis v. State, 132 N.E.3d 374 (Ind. 2019).

Mr. Davis then filed this federal habeas petition raising the following claims: (1) the prosecutor's comments during closing argument violated his his Fifth Amendment right to remain silent; (2) by trial counsel's failure to move to suppress his "illegally seized clothing" deprived him of his Sixth Amendment right to effective assistance of counsel; (3) his Sixth Amendment right to effective assistance of counsel was violated by his trial counsel's failure to adequately cross-examine A.L.; (4) his Sixth Amendment right to effective assistance of counsel was violated by his trial counsel's failure object to the jury instructions on accomplice liability; (5) his Sixth Amendment right to effective assistance of counsel was violated because his appellate counsel "presented erroneous facts" in his appellate brief; and (6) his Sixth Amendment right to effective assistance of counsel was violated because his appellate

counsel failed to move for rehearing "to correct the appeals court['s] erroneous findings." (ECF 2 at 2-6.)

## II.  ANALYSIS

Mr. Davis's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court to issue a writ of habeas corpus on behalf of a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." Hoglund v. Neal, 959 F.3d 819, 832 (7th Cir. 2020) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" Hoglund v. Neal, 959 F.3d at 832 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

### A.    Prosecutorial Misconduct Claim

In claim one, Mr. Davis asserts that comments made by the prosecutor during closing argument violated his Fifth Amendment right to remain silent. (ECF 2 at 3.) The prosecutor said:

> We don't have to prove motive and I don't know why and I can't accept a good reason why something like that would ever be acceptable. I don't know the reason. And as the State, we don't have to know it. He has a right not to say anything, he has a right to remain silent.

Davis v. State, 2013 WL 244112, at *5. Mr. Davis's counsel objected and a sidebar was held. *Id.* The court told the prosecutor, "You need to be careful about referencing things like that," to which the prosecutor responded, "Okay, I'll move on." *Id.* The court instructed the jury: "Ladies and gentleman, you will get an instruction from the Court about the defendant's right to remain silent and not having to prove or present any evidence which I think I already have discussed a couple times already." *Id.* At the close of the evidence, the jury was instructed that Mr. Davis wasn't required to present evidence, that he had a right to remain silent, and that the fact that he didn't testify should not be considered as evidence against him. *Id.* Mr. Davis claims that the prosecutor's comment violated his Fifth Amendment right to remain silent. The respondent argues that this claim is procedurally defaulted. (ECF 11 at 8.)

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Hoglund v. Neal, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review. Baldwin v. Reese, 541 U.S. 27, 30-31 (2004); O'Sullivan v. Boerckel, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. O'Sullivan v. Boerckel, 526 U.S. at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts and the time for doing so has passed. Davila v. Davis, 137 S. Ct. at 2064; Coleman v. Thompson, 501 U.S. 722, 735 (1991).

As the respondent points out, the Indiana Court of Appeals found that Mr. Davis didn't preserve his prosecutorial misconduct claim in accordance with state law. Davis v. State, 2013 WL 244112, at *4-*5. "[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules . . . that decision rests on independent and adequate state law grounds." Kaczmarek v. Rednour, 627 F.3d 586, 591 (7th Cir. 2010). The state

court's finding that Mr. Davis's prosecutorial misconduct claim wasn't properly preserved under state law means that it is procedurally defaulted. Wainright v. Sykes, 433 U.S. 72, 81-82 (1977) (holding that failure to comply with state's contemporaneous-objection requirement was an independent and adequate state procedural ground that barred federal habeas review); Smith v. Gaetz, 565 F.3d 346, 351 (7th Cir. 2009) ("Where, as here, the state court declined to review an issue that was not properly preserved, the state court decision rests upon a ground that is both independent of the federal question and adequate to support the judgment." (citation and internal quotation marks omitted)).

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017). "Cause is an objective factor external to the defense that impeded the presentation of the claim to the state courts," and only applies to factors that "cannot fairly be attributed to the prisoner." Crutchfield v. Dennison, 910 F.3d 968, 973 (7th Cir. 2018) (citation and internal quotation marks omitted). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice because he is actually innocent. House v. Bell, 547 U.S. 518, 536 (2006).

Mr. Davis suggests in his traverse that the claim isn't procedurally defaulted because the Indiana Court of Appeals considered this claim notwithstanding his failure to properly preserve it. But the Indiana Court of Appeals only reviewed this

claim for "fundamental error"—a narrow exception to the state's waiver doctrine under which an error may be so egregious that the trial court had an obligation to correct it even without an objection. *See* <u>Brewington v. State</u>, 7 N.E.3d 946, 974 (Ind. 2014). The state court's review of a defaulted claim for fundamental error doesn't amount to a merits determination. <u>Lee v. Davis</u>, 328 F.3d 896, 900 (7th Cir. 2003) ("[T]he examination required to determine whether there had been fundamental error did not undermine reliance on an independent state procedural ground of waiver[.]"); <u>Willis v. Aiken</u>, 8 F.3d 556, 567 (7th Cir. 1993) (holding that "the determination of the Indiana appellate court that no fundamental error resulted . . . rests on an independent and adequate state ground" that precludes federal habeas review, absent a showing of cause and prejudice). This argument doesn't save the issue for Mr. Davis.

Mr. Davis also argues that his default was the result of his trial counsel's failure to request a mistrial, which in his view amounted to ineffective assistance of counsel. (ECF 23 at 8.) Attorney error rising to the level of ineffective assistance can provide cause to excuse a procedural default, <u>Davila v. Davis</u>, 137 S. Ct. at 2065, but the exhaustion doctrine requires that an ineffective-assistance claim be presented to the state court as an independent claim before it can be used to establish cause for a procedural default. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-452 (2000). Although Mr. Davis asserted various ineffective-assistance claims on post-conviction review, each ground of ineffective-assistance is considered separately for exhaustion purposes. <u>Stevens v. McBride</u>, 489 F.3d 883, 894 (7th Cir. 2007). Mr. Davis didn't

present the state courts with a claim that his trial counsel's performance was constitutionally insufficient in failing to request a mistrial at the time of the prosecutor's comment. *See* <u>Hicks v. Hepp</u>, 871 F.3d 513, 530 (7th Cir. 2017) (to fairly present a claim, the "petitioner must place before the state court both the controlling law and the operative facts" supporting his claim). Rather, he argued that trial counsel was ineffective in failing to move to suppress evidence, failing to adequately cross-examine A.L., and failing to object to the jury instructions, which involved different operative facts. <u>Davis v. State</u>, 2019 WL 1526405, at *6-*9. Therefore, he can't use this claim to excuse his procedural default. <u>Edwards v. Carpenter</u>, 529 U.S. at 451-452; <u>Dellinger v. Bowen</u>, 301 F.3d 758, 767 (7th Cir. 2002).

Even if he could overcome this default, a second level of procedural default occurred when Mr. Davis left his prosecutorial misconduct claim out of his petition to transfer to the Indiana Supreme Court. <u>O'Sullivan v. Boerckel</u>, 526 U.S. at 848. Mr. Davis acknowledges the default, but argues that it's attributable to the decision of his appellate counsel to omit this claim from his petition to transfer, which in his view amounted to ineffective assistance. Again, Mr. Davis didn't exhaust a claim in the state proceedings that appellate counsel was ineffective on this ground. *See* <u>Edwards v. Carpenter</u>, 529 U.S. at 451-452. Mr. Davis asserted a claim of ineffective assistance of appellate counsel in the post-conviction proceedings, but it was based on counsel's alleged misstatement in a brief about the ballistics evidence. <u>Davis v. State</u>, 2019 WL 1526405, at *10. Mr. Davis hasn't provided grounds to excuse these defaults, so the court doesn't reach claim one on the merits.

B. Ineffective Assistance Claims

Mr. Davis's remaining claims center on the performance of his trial counsel, Lemuel Stigler, and appellate counsel, Mark Bates. Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 16 (2009). To prevail on a claim of ineffective assistance, the petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" Harrington v. Richter, 562 U.S. 86, 105 (2011). The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a federal habeas proceeding: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The court is to "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight," Ebert v. Gaetz, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." Premo v. Moore, 562 U.S. 115, 125 (2011). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." Delatorre v. United States, 847 F.3d 837,

845 (7th Cir. 2017). "It must merely be reasonably competent." *Id.* Courts afford counsel significant discretion in selecting a trial strategy based on the information known at the time. Yu Tian Li v. United States, 648 F.3d 524, 528 (7th Cir. 2011). An ineffective-assistance claim cannot succeed if the defendant wanted counsel to raise an argument that itself had no merit, because "[c]ounsel is not ineffective for failing to raise meritless claims." Warren v. Baenen, 712 F.3d 1090, 1104 (7th Cir. 2013); *see also* Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." Harrington v. Richter, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. The court turns to Mr. Davis's claims with these principles in mind.

1.      Trial Counsel's Failure to Move to Suppress Evidence

Mr. Davis first contends that his trial counsel was ineffective in not moving to suppress the clothing he was wearing at the time of his arrest. When Mr. Davis got to the jail, he completed a form indicating that his personal property should be released to his sister. He believes that in light of his expressed wishes, the jail had no right to turn his clothing over to the police for use in his criminal trial. Mr. Davis misunderstands his federal constitutional rights.

In rejecting the claim on post-conviction review, the Indiana Court of Appeals applied a standard consistent with *Strickland*.[1] Davis v. State, 2019 WL 1526405, at *5. The court concluded that a motion to suppress on the ground identified by Mr. Davis wouldn't have succeeded, so he didn't establish deficient performance or resulting prejudice. *Id.* at *6. This wasn't an unreasonable application of *Strickland*.

Mr. Davis was arrested after a high speed chase with police immediately after the shooting. *Id.* At the jail, he filled out a form notifying jail officials that his personal possessions could be released to his sister. *Id.* The jail didn't release his clothing to his sister; the clothing was retained and turned over to law enforcement some months later pursuant to a warrant. *Id.* The state court found that the jail policy Mr. Davis

---

[1] The court articulated the standard as follows: "In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet a two-part test, showing: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Davis v. State, 2019 WL 1526405, at *5. The court cited to an Indiana case, which in turn cited to *Strickland*. *See* Johnson v. State, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005). Under AEDPA, a state court need not cite to or even be aware of applicable Supreme Court case law, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002).

14

cited expressly allowed an arrestee's personal items to be retained by the jail when they were "needed for further investigation" or were to be used as evidence. *Id.* Indeed, Mr. Davis submits a copy of the jail handbook along with his petition, and it expressly provides that detainees may "have a family member or friend collect those items stored in the Clothing/Property area, *unless such are needed for further investigation and/or to be retained as evidence.*" (ECF 2-1 at 5 (emphasis added).)

Mr. Davis hasn't established that the jail acted in violation of its own policy in turning his clothes over to law enforcement. Nor has he demonstrated that the clothes would have been inadmissible under the Fourth Amendment even if there was a violation of jail policy. Marling v. Littlejohn, 964 F.3d 667, 669 (7th Cir. 2020) (violation of state or local rule does not require suppression of evidence under the Constitution). The state court's finding that officers obtained a warrant for the clothing directly contradicts his assertion that the officers took the clothing from the jail without a search warrant. Davis v. State, 2019 WL 1526405, at *6. The court must presume this fact is correct unless Mr. Davis presents clear and convincing evidence to the contrary, and he hasn't done so. 28 U.S.C. § 2254(e)(1).

Moreover, the Fourth Amendment allows the search and seizure of an arrestee's clothing and other personal effects even without a warrant. United States v. Edwards, 415 U.S. 800, 803 (1974) ("once the accused is lawfully arrested and is in custody, the effects in his possession . . . may lawfully be searched and seized without a warrant"). "This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail,

and at a later time searched and taken for use at the subsequent criminal trial." *Id.* That's precisely what occurred here. *Id.* Mr. Davis hasn't shown that a motion to suppress on this ground would have had any merit, so he hasn't established deficient performance or resulting prejudice. Warren v. Baenen, 712 F.3d at 1104; Stone v. Farley, 86 F.3d at 717.


2.      Trial Counsel's Failure to Effectively Cross-Examine A.L.

Mr. Davis next asserts that his counsel should have cross-examined A.L. more vigorously. (ECF 2 at 5.) He doesn't clearly explain how counsel's cross-examination of A.L. was deficient, but in his view, counsel's testimony during the post-conviction evidentiary hearing that he tried to handle this witness gingerly so as not to alienate the jury shows that his rights were violated. (*Id.*) The warden argues that this claim is procedurally defaulted. (ECF 11 at 16.)

Mr. Davis didn't include this claim in his petition to transfer to the Indiana Supreme Court on post-conviction review. It is therefore procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. at 848. Mr. Davis appears to argue in his traverse that his default should be excused because it was caused by the ineffective assistance of his appellate counsel, but the default at issue occurred in the post-conviction proceedings, when Mr. Davis was representing himself. His own omission of this claim from his pro se petition to transfer to the Indiana Supreme Court can't be considered a factor "external to the defense" that would excuse his default.

<u>Crutchfield v. Dennison</u>, 910 F.3d at 973. Therefore, the court doesn't reach this claim on the merits.

### 3. Trial Counsel's Failure to Object to the Jury Instructions

Mr. Davis next claims that his trial counsel was ineffective in failing to object to "flawed" jury instructions. (ECF 2 at 5.) He argues generally that the instructions misstated Indiana law on accomplice liability, without pointing to any particular language or explaining why the instructions were inaccurate. (*Id.*) In the state proceedings, he argued that the instructions "told the jury to consider his course of conduct before and after the murder but failed to state that they should consider his conduct during the murder as well." <u>Davis v. State</u>, 2019 WL 1526405, at *9. The warden argues that this claim lacks merit under AEDPA standards. (ECF 11 at 19.)

In rejecting the claim on post-conviction review, the Indiana Court of Appeals concluded that the instructions given were proper under Indiana law. <u>Davis v. State</u>, 2019 WL 1526405, at *9. The jury was told that Mr. Davis's "mere presence at the scene" was not enough and that the prosecution also had to prove that he "knowingly [performed] some act to render aid" while present at the scene of the crime. *Id.* The court of appeals concluded that an objection by counsel to the instructions would have been overruled. *Id.* This court is bound by the state court's determination that the instructions properly stated Indiana law when deciding whether counsel was ineffective in failing to object. *See* <u>Harper v. Brown</u>, 865 F.3d 857, 861 (7th Cir. 2017) ("[O]n § 2254 habeas review, we cannot disagree with a state court's resolution of an

issue of state law." (citation and internal quotation marks omitted)); <u>Earls v. McCaughtry</u>, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court cannot "second-guess state courts in interpreting state law"). Because an objection on this ground lacked merit under state law, Mr. Davis hasn't established deficient performance or prejudice resulting from counsel's failure to object. <u>Warren v. Baenen</u>, 712 F.3d at 1104; <u>Stone v. Farley</u>, 86 F.3d at 717.

### 4.    Appellate Counsel's Reference to "Bullet Casings"

Mr. Davis next claims that his appellate counsel, Mark Bates, was ineffective "when counsel presented erroneous facts in petitioner's state appellate brief." (ECF 2 at 6.) This claim centers on counsel's statement in the brief that "bullet casings" were found at the scene; Mr. Davis believes this to be inaccurate because at trial the ballistics expert referred to them as "spent bullet jacket fragments"—a difference the Indiana Court of Appeals found immaterial. <u>Davis v. State</u>, 2019 WL 1526405, at *10. The warden argues that this claim is procedurally defaulted. (ECF 11 at 22.)

Mr. Davis didn't include this claim in his petition to transfer to the Indiana Supreme Court. (ECF 11-15.) Therefore, it is procedurally defaulted. <u>O'Sullivan Boerckel</u>, 526 U.S. at 848. Mr. Davis appears to argue in his traverse that his default should be excused because it is due to ineffective assistance of counsel, but again, the default occurred in the post-conviction proceedings when Mr. Davis was representing himself. He hasn't established cause for setting aside the default. *See* <u>Crutchfield v. Dennison</u>, 910 F.3d at 973. Therefore, the court doesn't reach this claim on the merits.

5.      Appellate Counsel's Failure to File A Petition for Rehearing

Mr. Davis next claims that his appellate counsel was ineffective because he didn't file a petition for rehearing to correct the Indiana Court of Appeals' statement that "a shot was fired from petitioner's car," which he believes to be a misrepresentation of the record. (ECF 2 at 6.) Mr. Davis didn't assert any such claim in the state proceedings. Although he asserted a claim of ineffective-assistance by appellate counsel, it related to counsel's reference to bullet "casings" in a brief, not to counsel's failure to seek rehearing to correct a statement about a shot being fired from the car. <u>Davis v. State</u>, 2019 WL 1526405, at *10. The claim is therefore procedurally defaulted. Mr. Davis hasn't identified any basis for excusing his default, so the court does not reach this claim on the merits.

C.      Pending Motions

Along with his traverse, Mr. Davis filed two motions: one seeking appointment of counsel, and the other seeking to expand the record to include the jail policy pertaining to release of an arrestee's personal items. (ECF 22, 24.)

In the motion for appointment of counsel, he asserts generally that he "does not possess the technical ability to effectively prosecute this action." (ECF 24 at 1.) He further states that he is unable to afford counsel and is "unaware of any attorneys who are in the practice of representing indigent habeas petitioners on a *pro bono* basis." (*Id.* at 2.) A state prisoner pursuing federal habeas relief is entitled to counsel

when he is under a death sentence, which Mr. Davis is not. *See* 18 U.S.C. § 3599(a)(2); <u>McFarland v. Scott</u>, 512 U.S. 849, 855 (1994). Counsel must also be appointed when an evidentiary hearing is needed to resolve the petition. Rule 8(c) of the Rules Governing Section 2254 Cases. No evidentiary hearing is needed to resolve Mr. Davis's petition.

Therefore, whether to appoint counsel is purely a discretionary matter. *See* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."); *see also* <u>Winsett v. Washington</u>, 130 F.3d 269, 281 (7th Cir. 1997). The court will abuse its discretion in declining to appoint counsel only "if, given the difficulty of the case and the litigant's ability, [the petitioner] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have had a reasonable chance of winning with a lawyer at his side." *Id.* at 281 (citation omitted).

The record reflects that Mr. Davis is fully literate. He filed a petition and a traverse containing cogent arguments in support of his request for habeas relief. He appears to have an understanding of the applicable legal standard: he argues throughout his filings that the state court's decisions were "contrary to clearly established federal law." (*See, e.g.*, ECF 2 at 4, 6; ECF 23 at 9.) As already explained, the claims in the petition are procedurally defaulted or without merit under the stringent standards that apply under AEDPA. There's no indication that Mr. Davis

would have a reasonable chance of success if the court were to appoint counsel to represent him. Therefore, his motion for appointment of counsel is denied.

Mr. Davis's remaining motion seeks to "expand the record" to include the Lake County Jail inmate handbook. (ECF 22.) AEDPA permits the court to expand the record in a habeas case in only very narrow circumstances. 28 U.S.C. § 2254(e)(2); *see also* Boyko v. Parke, 259 F.3d 781, 789-790 (7th Cir. 2001) (observing that a federal habeas court's ability to hold an evidentiary hearing to supplement the record is "severely circumscribed"). That is because in the ordinary case, the court is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). A habeas petitioner is entitled to a hearing to develop the factual basis for his claim only when his factual allegations "if true, would entitle [him] to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Conversely, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.

Even if the court conducted further proceedings to permit Mr. Davis to supplement the record, an official copy of the jail handbook would be of no assistance to him.[2] As already outlined, the jail policy he references permitted the retention of an arrestee's clothing and other personal effects when needed for investigatory or evidentiary purposes. (ECF 22-1 at 3.) Additionally, a violation of jail policy, if one

---

[2] The document he submits doesn't appear to be an official copy of the jail handbook, since it has been written on in several places. (*See* ECF 22-1.)

occurred, wouldn't establish that Mr. Davis's federal constitutional rights were violated. Therefore, the court denies this motion.

### D.    Certificate of Appealability

The court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Rule 11 of the Rules Governing Section 2254 Cases. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). Mr. Davis's claims are procedurally defaulted or without merit under AEDPA standards. The court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Mr. Davis to proceed further. The court declines to issue him a certificate of appealability.

### III.    CONCLUSION

For the reasons set forth above, the petition (ECF 2) is DENIED, and the petitioner is DENIED a certificate of appealability. The petitioner's motions (ECF 22, 24) are DENIED. The clerk is DIRECTED to close this case.

SO ORDERED on May 20, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT